**ORIGINAL**

1  **JOSE A. DIAZ**
2  Post Office Box 922181
3  Sylmar, CA  91392
   (323)  896-5224 (tel)
4  SuperKarma101@gmail.com
5  Attorney for **JOSE A. DIAZ**, Plaintiff in Pro Se

6

7          IN THE UNITED STATES DISTRICT COURT

8          CENTRAL DISTRICT OF CALIFORNIA

9

10                                              CV13-6047 DDP (AJW)

11  **JOSE A. DIAZ,**                    )    **CASE NO.**
                                         )
12          PLAINTIFF,                   )    **VERIFIED COMPLAINT**
                                         )    Demand for Jury Trial
13                                       )
                                         )
14                                       )
15  **CITY OF SAN FERNANDO; SAN**        )
    **FERNANDO; POLICE DEPARTMENT;**     )
16  **JEFF ELEY;ROBERT PARKS;**          )
    **MARSHALL MACK**; and **DOES 1**    )
17  through **10**, inclusive,           )
                                         )
18                                       )
                                         )
19          DEFENDANTS.                  )
                                         )
20  ─────────────────────────────       )

21  **TO:  ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

22          **COMES NOW** the Plaintiff in this matter, **JOSE A. DIAZ**, and

23  proceeding in Pro Se, hereby states his complaints and allegations as

24  follows:

25                        **JURISDICTION**

26          1.    This action arises under California law and the amount in

27  controversy exceeds Fifty Thousand Dollars ($50,000.00.)

28



PAID
AUG 1 9 2013
Clerk, US District Court
COURT 4612

1

2.     Jurisdiction of this Court is alleged under *Title 28 U.S.C. §§ 1331, 1337, 1343(a)*, and *1367(a); 42 U.S.C. §1983* (deprivation of rights), *§1985 (3)* (conspiracy to interfere with civil rights), *§1986, and §1988* (proceedings in vindication of civil rights); and *18 U.S.C. §§ 1341, 1511; 1961* (and statutes cited therein).

3.     Jurisdiction of this Court for the pendent claims is authorized, by *F.R. Civ. P. 18(a)* and arises under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs, 383 U.S. 715 (1966)*.

4.     Supplemental Jurisdiction is hereby alleged under *28 U.S.C. Section 1367*.   This gives the Court authority to hear non-related federal claims authorized under *28 U.S.C. §1367*.

5.     Personal Jurisdiction of this Court over the Defendants is due to one, or more, of the following:

a.     Defendants are citizens or entities residing, or doing business, in the State of California;

b.     The Plaintiff is suing the Defendants for actions Defendants did in the State of California;

c.     The Defendants were present in California at the time they were formally and personally served with the lawsuit; and/or,

d.     The Defendants have acted in a way that put them at risk of being sued in California.

6.     Concurrent Jurisdiction of this Court under the *Securities Act of 1933* is alleged pursuant to *Luther v. Countrywide Financial Corporation* (that state courts have concurrent jurisdiction with federal courts to hear liability lawsuits under the *Securities Act of 1933*, and that more recent legislative enactments did not eliminate the concurrent state court jurisdiction for the Plaintiff's *'33 Act* claims.)

/ / / / /

## VENUE

7.    Venue is conferred upon the Court pursuant to *28 U.S.C. 1391*.

## PARTIES

8.    Plaintiff **JOSE A. DIAZ** (hereinafter referred to as "**DIAZ**") is a natural person residing in Los Angeles County, California. **DIAZ** is, and has been, a resident of the City of Sylmar, County of Los Angeles, and State of California during all relevant times of this action.

9.    Defendant, **CITY OF SAN FERNANDO** (hereinafter referred to as the '**CITY**") is a municipal organized community located and, at all times herein mentioned, conducting business as same in the County of Los Angeles, State of California

10.    Defendant, **SAN FERNANDO POLICE DEPARTMENT** (hereinafter referred to as "**POLICE DEPARTMENT**") is organized and existing under the laws of the State of California with its principal office located in the **CITY**, in the County of Los Angeles, State of California.

11.    Defendant, **JEFF ELEY** (hereinafter referred to as "**ELEY**'), is an employee of Defendant, **POLICE DEPARTMENT**, doing business in and for the **CITY**, in the County of Los Angeles, State of California in the capacity of a former Acting Chief of Police, currently on administrative leave.

12.    Defendant, **ROBERT PARKS** (hereafter referred to as '**PARKS**") is an employee of the **POLICE DEPARTMENT**, doing business in and for the **CITY**, in the County of Los Angeles, State of California in the position of Acting Interim Chief of Police.

13.    Defendant, **MARSHALL MACK** (hereinafter referred to as "**MACK**") is an employee of the **POLICE DEPARTMENT**, doing business in and for the **CITY**, in the County of Los Angeles, State of California, in the capacity of a Police Officer.

3

**14.**   Defendants named herein as **DOES 1** through **10,** inclusive, (hereinafter collectively referred to as the "Defendants") are sued herein under such fictitious names.  Their true names and capacities are unknown to Plaintiff at this time, however, Plaintiff seeks leave of this Court to amend this Complaint when and if same have been ascertained.

**15.**   Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages, as herein alleged, were proximately caused by their conduct.

**16.**   At all times herein mentioned, each of the Defendants, including the **DOES**, were acting as the agents, servants, and employees of their co-Defendants and, in doing the things herein after alleged, were acting within the scope of their authority as such agents, servants, and employees, and with the permission and consent, either expressed or implied, of each of their co-Defendants.

## STATEMENT OF FACTS

**17.**   On November 4, 2007, Plaintiff was arrested by **MACK,** a **POLICE DEPARTMENT** employee and certain disputes and controversies arose as a consequence of this incident.

**18.**   Such disputes and controversies include, but are not limited to the claims, demands and causes of action set forth in *Jose Diaz v. The City of San Fernando, et al.,* L.A.S.C. Case No. PC044139.

**19.**   This matter was resolved by way of a Settlement and Release Agreement dated January 12, 2011.

**20.**   On, or about, January 5, 2012, Plaintiff caused approximately thirty (30) pieces of mail (hereinafter referred to as the "**LETTERS**") to be delivered to each of the **POLICE DEPARTMENT's** officers and employees,

explaining his position in this prior matter and outlining the details of the **police corruption** involved therein.

21.    The **LETTERS** were never delivered to the individual **POLICE DEPARTMENT's** officers and employees.

22.    Since then, through investigations, Plaintiff has been given indisputable information and evidence that the **LETTERS** were stolen from the **POLICE DEPARTMENT's** mail room by **ELEY** and **MACK**.

23.    As further evidence to this act of Mail Theft/Mail Fraud/Mail Tampering of the **LETTERS** on the part of **ELEY** is the Restraining Order he fervently pursued to be issued against Plaintiff since then with the only justification being that Plaintiff had "sent mail to the San Fernando **Police** Department that was addressing **corruption** in his department . . ."

24.    Since the stolen **LETTERS** also had factual information regarding Plaintiff's arrest by **MACK** on November 4, 2007, through private investigations, Plaintiff has been informed and believes and thereon alleges that **MACK** conspired with **ELEY** in the tampering and theft of the **LETTERS**.

25.    Afterwards, the "stolen" **LETTERS** were booked into evidence at the **POLICE DEPARTMENT** by an investigator.

26.    The content of the **LETTERS** were one hundred percent (100%) lawful as confirmed by legal counsel, the former **CITY** attorney, and other **CITY** personnel.

27.    It is clear that the **POLICE DEPARTMENT**, **ELEY**, **MACK** and each of the other Defendants were angry about the facts and statements contained in the **LETTERS** concerning recent **corrupt** actions undertaken by them.

28.    In addition, it is known to the alleging Plaintiff that Defendant **PARKS** received an investigative report concerning the mail

fraud/tampering/theft of the other Defendants, and even though he was acting Chief of Police, he chose to do nothing. Which action, or lack of action, on his part clearly demonstrates that **PARKS** accepts the **POLICE DEPARTMENT's** corruption.

29.    **PARKS** should have acted differently and should have known better due to the fact that he is a commissioned officer in the United States Air Force; and when one is in such a position of leadership it is imperative that the proper discipline be executed in order to prevent and control such corruption.

30.    As a direct result of the unlawful and fraudulent actions displayed by the Defendants, and each of them, in their actions described herein, actions which were incited by Plaintiff's disclosure of the details of **police corruption** exhibited by the **POLICE DEPARTMENT**, Plaintiff now stands in fear of his life, safety and freedom.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### MAIL FRAUD

### (AGAINST ALL DEFENDANTS)

31.    Plaintiff repeats, re-alleges, and incorporates by this reference the allegations contained in Paragraphs 1 through 30, above, with the same force and effect as if fully set forth herein.

32.    A scheme to defraud under the mail fraud or wire fraud statutes is described by the courts as "a plan to deprive a person of something of value by trick, deceit, chicane, or overreaching". *United States v. Autuori,* 22 F3d 105, 115 (2nd Cir. 2000). The *Hobb's Act, 18 United States Code* 1951, the *Postal Clause* and the *Spending Clause*.

/ / / / /

/ / / / /

**33.**   Likewise a failure to disclose a benefit of where the public official has a duty to disclose may also satisfy this element of the mail fraud and wire fraud statutes.

**34.**   The mail fraud statute, *18 U.S.C.* § 1341, "[t]he oldest statute used to address public **corruption**," was enacted in 1872 and first used against public **corruption** in the 1940s.

**35.**   While several early cases employed the "**intangible right to honest government**," *United States v. States* (8th Cir. 1973) was the first case to rely on *Honest Services* fraud as the sole basis for a conviction.

**36.**   In the United States, mail and wire fraud is any fraudulent scheme to **intentionally deprive another of property or honest services via mail** or wire communication. **It has been a federal crime in the United States since 1872**. *18 U.S.C. § 1341* provides:

> "Whoever, having devised or intending to devise any scheme
> or artifice to defraud, or for obtaining money or property by
> means of false or fraudulent pretenses, representations, or
> promises, or to sell, dispose of, loan, exchange, alter,
> give away, distribute, supply, or furnish or procure for unlawful
> use any counterfeit or spurious coin, obligation, security,
> or other article, or anything represented to be or intimated or
> held out to be such counterfeit or spurious article, for the
> purpose of executing such scheme or artifice or attempting
> so to do, places in any post office or authorized depository
> for mail matter, any matter or thing whatever to be sent or
> delivered by the Postal Service, or deposits or causes to be
> deposited any matter or thing whatever to be sent or delivered
> by any private or commercial interstate carrier, or **takes or
> receives therefrom, any such matter or thing**, or knowingly

causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, **shall be fined** under this title or **imprisoned not more than 20 years, or both** . . . A scheme to defraud under the mail fraud or wire fraud statutes is described by the courts as "a plan to deprive a person of something of value by trick, deceit, chicane, or overreaching". (emphasis added) *United States v. Autuori,* 22 F3d 105, 115 (2nd Cir. 2000); The *Hobb's Act*, 18 *United States Code 1951*

37.    Mail Fraud and Wire Fraud are the most commonly used charges to combat public **corruption** in the United States.

38.    Under these statutes the government may charge federal, state, or local officials with devising any scheme to defraud, or a scheme to obtain money or property by means of false or fraudulent pretenses. To gain federal jurisdiction, the **prosecution must prove a single use of the mails or wires (telephone, facsimile transmissions, e-mail) to execute the plan.**

39.    In 1988, the federal law was amended in *18 United States Case; 1346* so that the term "Scheme to Defraud" now includes a scheme to deprive another of the intangible right of honest services.

40.    This standard encompasses a failure to disclose a benefit of where the public official has a duty to disclose may also satisfy this element of the mail fraud and wire fraud statutes.

41.    A scheme to defraud under the mail fraud or wire fraud statutes is one of the most commonly used charges to combat public **corruption** in the United States.

42.    Under these statutes the government may charge federal, state, or local officials with devising any scheme to defraud, or a scheme to obtain money or property by means of false or fraudulent pretenses.

43.    To gain federal jurisdiction, the prosecution must prove a single use of the mails or wires (telephone, facsimile transmissions, e-mail) to execute the plan.

44.    In 1988, the federal law was amended in *18 United States Case 1346* so that the term "Scheme to Defraud" now includes a scheme to deprive another of the intangible right of honest services.

45.    A failure to disclose a benefit of where the public official has a duty to disclose may also satisfy this element of the mail fraud statute.  .

46.    A scheme to defraud under the mail fraud or wire fraud statutes is described by the courts as "a plan to deprive a person of something of value by trick, deceit, chicane, or overreaching". *United States v. Autuori,* 22 F3d 105, 115 (2nd Cir. 2000).

47.    Thus, the mail fraud technique distributed by **MACK, ELEY** and the **POLICE DEPARTMENT** most assuredly falls under these statutes and Plaintiff requests the Court's intervention to discipline and severely punish the public officials involved.

## SECOND CAUSE OF ACTION

## MALICIOUS PROSECUTION AND MISUSE OF LEGAL PROCEDURE

## (AS TO ALL DEFENDANTS)

48.    Plaintiff repeats, re-alleges, and incorporates by this reference the allegations contained in Paragraphs 1 through 47, above, with the same force and effect as if fully set forth herein.

49.    **MACK** and the Defendants herein, and each of them, attempted to institute criminal process against the Plaintiff with malice and with the

1  intent to prevent the delivery of the information contained in the **LETTERS**
2  by requesting a Restraining Order to be issued against him.

3       50.    The elements of a malicious prosecution claim are commonly
4  described as:

5            **a.**    commencement of the action;

6            **b.**    lack of probable cause (the action was commenced or
7  continued to be prosecuted without probable cause as to one or more
8  claims);

9            **c.**    malice (the action was initiated with malicious intent); and,

10           **d.**    damages (the prosecution of the action caused economic
11  and/or non-economic damages).  See *Sheldon Appel Co.v. Albert & Oliker*
12  (1989) 47 Cal.3d 863; *Bertero v. National General Corp.* (1974) 13 Cal.3d
13  43; *Franklin Mint Co.v.Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4[th]
14  313, 333; *Robbins v. Blecher* (1997) 52 Cal.App.4[th] 886 and *California Civil*
15  *Jury Instructions* (CACI) 1501.

16       51.    Malicious prosecution is an intentional and therefore uninsurable
17  tort.

18       52.    Any individual who prosecutes or pursues such an action as an
19  individual party may be liable for malicious prosecution.

20       53.    Misuse of Legal Procedure is a series of torts that involve the
21  **corrupt** or undue filing of litigation for unlawful reasons. Public right of
22  access to courts is granted on good faith that claimants will act with probable
23  cause and honesty.

## THIRD CAUSE OF ACTION
## FRAUD
### (AS TO ALL DEFENDANTS)

27  / / / / /
28  / / / / /

54.     Plaintiff repeats, re-alleges and incorporates by this reference the allegations contained in Paragraphs 1 through 53 above with the same force and effect as if fully set forth herein.

55.     At all times relevant herein, the conducts of the Defendants were subject to *42 U.S.C. Sections 1983, 1985, 1986* and *1988*.

56.     Acting under the color of law, the Defendants, and each of them, worked a denial of Plaintiff's rights, privileges and/or immunities as secured by the United States Constitution, to wit: by depriving **DIAZ** of his liberty without adhering to due process of law; and, **by conspiring** for the purposes of impending and hindering the due course of justice.

57.     It is alleged that these actions by the Defendants were made with the intent to deny **DIAZ** equal protection of law without justifiable cause, thereby depriving **DIAZ** of his rights, privileges and immunities as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

### FOURTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. 1983
### (AS TO ALL DEFENDANTS, AND EACH OF THEM)

58.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 57 hereinabove with the same force and effect as if fully set forth herein.

59.     As a result of the concerted unlawful and malicious theft and tampering of his mail, Plaintiff alleges that all Defendants subject herein directly and/or indirectly deprived **DIAZ** of his right to his liberty without the benefit of due process of law; and his right to equal protection of the laws. The due course of justice was impeded, in direct violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and the language contained in *42 U.S.C. 1983*.

# FIFTH CAUSE OF ACTION
# DEPRIVATION OF RIGHTS
## (AS TO ALL DEFENDANTS)

60. Plaintiff repeats, re-alleges and incorporates by this reference all of the allegations contained in Paragraphs 1 through 59, above, with the same force and effect as if fully set forth now.

61. At all times relevant herein, the conduct of all Defendants were subject to *42 U.S.C. §1981, §1983, §1985,* and *§1986,* and at all times relevant to this Complaint, all Defendants were acting within the course and scope of their employment with the **POLICE DEPARTMENT**.

62. Acting under the color of law, Defendants worked a denial of Plaintiff rights, privileges or immunities secured by the United States Constitution and/or by Federal law. The activities of the Defendants, and each of them, are unlawful and constitute a separate violation of *18 USC §§241, 242, 1091, 1512(d) (2), 1505,* and *1513.*

63. The crimes against the Plaintiff herein by the Defendants, and each of them, are a violation of the Plaintiff's First Amendment, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

64. Acting under color of law and pursuant to official policy or custom, the **POLICE DEPARTMENT**, and the other Defendants, knowingly, recklessly, and with gross negligence failed to instruct, supervise, control and/or discipline **MACK**, **ELEY** and the other **POLICE DEPARTMENT's** Officers and employees in their duties to refrain them from unlawfully and maliciously prosecuting and/or harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges and/or immunities.

65. The Defendants, and each of them, conspired to violate the rights, privileges and/or immunities guaranteed to **DIAZ** by the United States

Constitution, the laws of the United States and the laws of the State of California; and, in otherwise depriving Plaintiff of his constitutional and statutory rights, privileges and immunities.

66.   Pub. L. 112-238. (See Public Laws for the current Congress.) states in pertinent part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . ."

### SIXTH CAUSE OF ACTION
### GROSS NEGLIGENCE
### (AS TO ALL DEFENDANTS)

67.   Plaintiff repeats, re-alleges, and incorporates by this reference the allegations contained in Paragraphs 1 through 66, above, with the same force and effect as if fully set forth herein.

68.   Defendants, and each of them, caused the **LETTERS** to be tampered with and stolen and then declared knowledge of the **LETTERS** by admitting that the **LETTERS** were taken due to the fact that their content concerned facts regarding **police corruption** within the **POLICE DEPARTMENT**.

69.   Plaintiff intends on proving by clear and convincing evidence that the Defendants have been guilty of oppression, fraud, malice and willful and wanton negligence by committing such actions.

70.     Plaintiff hereby alleges that the Defendants were aware of the probable dangerous consequences of their conduct, and that they willfully and deliberately failed to avoid those consequences.   *Taylor v. Superior Court of Los Angeles County* (1979) 24 Cal. 3d 890, 896.

71.     This behavior which Defendants, **MACK**, **ELEY** and the **POLICE DEPARTMENT**, along with the other Defendants, and each of them, knew, or should have known, to be negligent and corrupt, was the direct cause of the damages which **DIAZ** has incurred in an amount to be proven at the time of Trial.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE PROTECTION FROM HARASSMENT ACT 1991

## (AS TO ALL DEFENDANTS)

72.     Plaintiff repeats, re-alleges, and incorporates by this reference the allegations contained in Paragraphs 1 through 71, above, with the same force and effect as if fully set forth herein.

73.     The *Protection from Harassment Act 1997* ("ACT") prohibits the pursuit of a "course of conduct which amounts to harassment of another".

74.     Harassment is conduct that causes alarm or distress, and a course of conduct must involve such conduct on at least two (2) occasions.

75.     Defendants, and each of them, either personally, or have authorized, the following harassing behavior towards Plaintiff.

76.     Defendants **ELEY** and **MACK**, and the other Defendants, tampered with and literally stole the Plaintiff's **LETTERS** from the mail room at the **POLICE DEPARTMENT,** thereby conducting mail fraud, mail theft and wrongful seizure of Plaintiff's personal property.

77.     In addition, Defendant **MACK** requested assistance and cooperation from the **CITY's** officials to fraudulently, negligently and

maliciously harass Plaintiff for sending the **LETTERS** regarding **police corruption** to the **POLICE DEPARTMENT**.

## EIGHTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE
### AS TO ALL DEFENDANTS

**78.**   Plaintiff repeats, re-alleges, and incorporates by this reference the allegations contained in Paragraphs 1 through 77, above, with the same force and effect as if fully set forth herein.

**79.**   Tortious interference in the common law of torts, occurs when a person intentionally damages a Plaintiff's business relationships.

**80.**   Tortious interference with business relationships occurs where the tortfeasor acts to prevent the Plaintiff from successfully establishing or maintaining business relationships. Such conduct is termed tortious interference with prospective business relations, expectations, or advantage or with prospective economic advantage.

**81.**   Defendants, and each of them, conducted tortious interference with Plaintiff's business relations with the **CITY** and the **POLICE DEPARTMENT**, thereby causing monetary damages to Plaintiff for loss of establishing and maintaining these relations and the prospective economic advantage this would bring in an amount to be proven at Trial.

## NINTH CAUSE OF ACTION
## POLICE CORRUPTION
### (AGAINST ALL DEFENDANTS)

**82.**   Plaintiff repeats, re-alleges, and incorporates by this reference the allegations contained in Paragraphs 1 through 81, above, with the same force and effect as if fully set forth herein.

**83.**   The statutes most often used to prosecute public **corruption** are the *Hobbs Act, Travel Act, RICO*, the program bribery statute, and the mail

and wire fraud statutes. These statutes have been upheld as exercises of Congress's *Common Clause* power,

84.   Several statutes, mostly codified in *Title 18 of the United States Code*, provide for federal prosecution of public **corruption** in the United States.

85.   Federal prosecutions of public **corruption** under the *Hobbs Act* (enacted 1934), the species of official actions that are cognizable, whether or not non-public official defendants can be prosecuted, and in the authorized sentence. Types of misconduct include, false confession, false arrest, falsified evidence, false imprisonment, intimidation, **police** brutality, **police corruption**, racial profiling, surveillance abuse and off-duty misconduct.

Others include:

- **Noble cause corruption**, where the officer believes the good outcomes justify bad behavior;
- **Selective enforcement** (knowledge and allowances of violations by friends, family and/or acquaintances unreported);
- **Abuses of power** (using badge or other ID to gain entry into concerts, to get discounts, etc.);
- **Lying under oath** (blatant lies under oath and/or to other authorities to cover wrongdoing; i.e., Sgt. Hanchett);
- **Influence of drugs and/or alcohol** while on duty; and,
- **Violations by officers of police procedural policies**.

86.   There is a view that police officers share a 'code of silence' and do not turn each other in for misconduct. While the police has called this code a myth, a 2005 survey found evidence that it exists.

87.   Since the 1970s the United States Justice Department has made it a priority to target state and local officials for acts of public **corruption**.

**88.**   This broad jurisdiction of the United States into the activities of local and state officials is supported by vast investigative resources of the Federal Bureau of

Investigation, the Internal Revenue Service and the United States Attorney's Offices throughout the country and the Criminal Division of the United States Justice Department.

**89.**   Plaintiff alleges that the actions demonstrated by Defendants, **MACK, PARKS, ELEY** and the **POLICE DEPARTMENT**, and the other Defendants, violate the *Federal Statutory Scheme* and the *Hobb's Act* and violates the statutes regarding **police corruption**, mail fraud, <u>**false statements, perjury and the code of ethics**</u>.

**90.**   Aside from the very true fact that **ELEY** and **MACK** effectively stole Plaintiff's mail and personal property for their own use, benefit and devices.  There are other facts known to Plaintiff that can be proven without a doubt.

**91.**   For example, in the case of Sgt. Hanchett of the **POLICE DEPARTMENT.**  Plaintiff has been informed and believes and that this Sgt. of the **POLICE DEPARTMENT** was recently terminated from her duties for lying under oath regarding another incident occurring at the San Fernando Police Station Jail.  This was in direct violation with the Standard Police Officer Application and the Police Officer Standards of Training (POST) wherein it clearly states that an officer of law must possess honesty, integrity and be of good moral character.  But Hanchett had failed to do so.  Yet, when she threatened the **POLICE DEPARTMENT** by telling them she would disclose the true facts about a suicide which occurred recently in the San Fernando Police Station jail, she was rehired and then promoted. **Corruption at its finest**.

92.   There is more information to be learned about this successful suicide at the jail.   Just prior to the suicide, an authorized State agency conducted its annual inspection of the jail and had reported that the jail needed to close up/take off the ceiling vents/openings in the jail cells as a suicidal inmate could easily tie some kind of material to it and hang themselves.   The **POLICE DEPARTMENT's** administrators never followed through on this directive to fix or correct such openings in order to prevent a suicide.   Sure enough, a suicide did occur!   Just as the state agency's jail inspector said it could.   A San Fernando Police Station jail inmate was, indeed, able to procure some material, lace it through the opening in the ceiling and effectively hung himself. Thus, committing a successful suicide on the **POLICE DEPARTMENT's** watch!   Such suicide could have been prevented should the proper jail cell checks had been made, and had the **POLICE DEPARTMENT's** administrators followed the jail inspector's directives.

93.   The officers who arrived and attempted to revive the suicide inmate obviously did not have, or did not care to use, the proper methods for such revival.   It is stated through the coroner's report that they did not even remove the fabric that had choked the prisoner to death during their CPR attempt.

94.   There is a required CPR class these jailers and officers need to attend, however, it is known to Plaintiff, and can be absolutely proven at trial, that the officers and jailers who work at the San Fernando City Jail were given the answers to the questions on the final test by **PARKS**.   Just to make sure they would pass, this showing even further corruption on the part of the **POLICE DEPARTMENT**.

95.   There is much controversy surrounding this suicide.   The fact that one of the "officers" in charge of checking the inmates on, at least, an

1  hourly basis was not even qualified to be in the jail in any capacity

2  whatsoever and had not even attended the "jailer" school which is required.

3      **96.** He was a "reserve" **POLICE DEPARTMENT** officer who checked

4  in twice a month, and who worked as a dentist in his every day job.

5      **97.** Officer/DDS **Yamane**, however, was just assisting **Jailer**

6  **Vanicek** the day of the suicide. **Jailer Vanicek** being the most probable

7  person to have falsified the records regarding the times of the routine checks

8  on the inmates. While **Jailer Vanicek** should have been doing regular jail

9  checks he was sleeping on duty, on Facebook, watching t.v. or movies, or

10 some other similar activity. Thus, it was easier for the suicidal inmate to

11 execute his suicide, which a reasonable and prudent person could construe

12 as a preventable death or a wrongful death and which blame would all fall on

13 the **POLICE DEPARTMENT's** watch.

14     **98.** Inmates are supposed to be observed by a jail official **at least**

15 once per hour while they are in custody. However, the man who killed

16 himself did so in such a manner that it would have taken longer than an hour

17 for him to orchestrate. **Thus, it is obvious that the jail checks were not**

18 **done in a timely fashion, or had been skipped all together.**

19     **99.** The "official" record states the jail checks were accomplished

20 according to procedure. But the video camera surveillance tapes have

21 disappeared and someone has falsified those records and the only one with

22 primary motive was the **Jailer Vanicek.**

23     **100.** The final in-house investigation was done by **Lt. Glascow**. An

24 officer who had been in negative controversy himself. He had been

25 demoted as a result of falsifying records and tampering with the **POLICE**

26 **DEPARTMENT's** training program.

27     **101.** In his final report on the jail suicide in this investigational report,

28 even though the evidence of misconduct was overwhelming, incriminating

both officers and jailers alike of the **POLICE DEPARTMENT,** he chose to clear everyone, and this decision was supported by the acting Chief of Police.   Another sure sign of the **POLICE DEPARMENT's** routine corrupt practices.

102.  The list of **corrupt** acts of the **POLICE DEPARTMENT** goes on . . . take the incident of the homeless man who was shot and killed by an officer of the **POLICE DEPARTMENT** recently.

103.  According to private investigations, **Officer Aguirre**, while stating that he had been in "fear for his life" when the homeless man brandished a flimsy tree branch at him, proceeded to shoot the elderly, out of shape, malnourished man and successfully kill him.

104.  All of this could have been prevented.  <u>**Officer Aguirre could have used other non-lethal techniques which were easily available to him in order to arrest this homeless man**</u>, considering the man was elderly, out of shape, malnourished, had no special defense training and that there was a great distance separating the two of them.  He did not wait for back-up and took this act upon himself, which is also against **POLICE DEPARMENT** policy when dealing with these types of situations.

105.  There are so many other methods that **Officer Aguirre** could have used in this particular case, including, but not limited to, using his patrol car as cover, using his pepper spray or using his nightstick to protect himself.

106.  According to POST and the **POLICE DEPARTMENT's** training manuals, deadly force is only used as an absolute last resort.  Being that **Officer Aguirre** had several other non-lethal weapons immediately available to him, he chose not to use them, which clearly demonstrates an act of malice and excessive force and the fact that **Officer Aguirre** did not use everything in his power to prevent the death of the elderly homeless man.

**107.  Officer Aguirre** had already been involved in a lawsuit charging him with the use of **"excessive force"** when he severely injured a young man to the point of him having to seek treatment at a hospital emergency room, even though this man at the time had already been successfully restrained by, at least, four (4) officers from both the **POLICE DEPARTMENT** and the L.A.P.D., and <u>**was posing no threat whatsoever to anyone**</u>.

**108.  Officer Aguirre** suddenly struck this young man three (3) to six (6) times in the face, without justification or cause, while the man was restrained, leading to the man's severe injuries.   This incident lending credence to the fact that **Officer Aguirre** does routinely operate in an **excessively forceful** manner.  This can also be shown by the fact that the other officers had seen no need to strike this individual.

**109.**  Furthermore, **Officer Aguirre** was also involved in a harassment incident with a **POLICE DEPARTMENT** cadet. Yet, **Officer Aguirre** is still acting as a patrol officer with the **POLICE DEPARTMENT**, which only further supports the fact that **PARKS** tolerates the **POLICE DEPARTMENT**'s corruption.

**110.**  Plaintiff understands that the **POLICE DEPARTMENT's** officers have never had any quality or significant training in dealing with mental health issues, especially those they encounter when dealing with homeless and mentally ill people.  So, it seems, their only known response to a mentally ill and/or homeless person is to use excessive force and, in fact, at times kill them.

**111**.  Such claim can also be substantiated by a flyer which was posted in the **POLICE DEPARTMENT's** station, which flyer belittled and dehumanized the homeless population.  The fact that such a demeaning flyer was posted for over one hundred (100) days at the **POLICE**

**DEPARTMENT** proves that the Chief of Police, the Administrators and the officers of the **POLICE DEPARTMENT** approve of dehumanizing and disrespecting the homeless population.

112.  What is interesting to Plaintiff is the last minute information he was given the day before filing this Complaint.  It seems as if Chief **PARKS** and several other officers of the **POLICE DEPARTMENT** were seen attending a strategic training session in dealing with the mentally ill. However, the officers were seen attending the training in Orange County, California.  Plaintiff questions the reasoning why these officers are just now catching up on the proper procedure to deal with people with mental issues, now that significant damage has already been done?  And why are they attending a training session so far away?

113.  Also, Plaintiff learned one more interesting detail in the last minute information he received, it was apparent that **Officer Aguirre**, the officer whose excessively forceful behavior has caused the most damage and has gotten the most negative attention, was not participating in the training

114.  This fact adding to Plaintiff's ongoing fear that **Officer Aguirre** reported wrongful conduct will be allowed to continue, unbridled, until the next time he is in the mood to severely injure another human being.

115.  These details are only a few known, told and can be assuredly proven by the Plaintiff in this proceeding, **evidencing that there is, beyond a doubt, a pattern and practice of corrupt behavior of the POLICE DEPARTMENT.**

116.  Due to this knowledge and to the facts at hand, Plaintiff remains in fear of his life, his liberty and well-being and beseeches this Court to consider the circumstances herein and, afterwards, grant to Plaintiff relief

and a remedy against the wrongful acts committed towards him and the rampant **corruption** of the Defendants, and each of them.

## REQUEST FOR RELIEF

### AS TO ALL CLAIMS:

**WHEREFORE,** Plaintiff prays for judgment against these Defendants jointly, and severally, for:

**a.**    actual and compensatory damages in an amount to be proven at the time of Trial in this case;

**b.**    punitive damages in an amount to be decided by the Court large enough to financially punish the Defendants for their wrongful and unlawful actions;

**c.**    attorney's fees and/or legal document preparation fees;

**d.**    costs of suit herein;

**e.**    any and all other relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues raised in this Complaint.

Respectfully Submitted:

**DATED:**  July 26, 2013

_____

**JOSE A. DIAZ,**
Attorney for Plaintiff,
**JOSE A. DIAZ in Pro Se**

23

ORIGINAL

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ )

JOSE A. DIAZ

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

CITY OF SAN FERNANDO; et al.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

JOSE A. DIAZ, IN PRO SE
POST OFFICE BOX 922181
SYLMAR, CA  91392

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

UNKNOWN

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☒ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
MAIL FRAUD; POLICE CORRUPTION; FRAUD; NEGLIGENCE; TORTIOUS INTERFERENCE; MALICIOUS PROSECUTION; MISUSE OF LEGAL PROCESS

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☒ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Matters | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   [X] NO   [ ] YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   [ ] NO   [X] YES

If yes, list case number(s):   L.A.S.C. CASE NO. LAV 12W02585 _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [X] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[X] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** JOSE A. DIAZ   [Digitally signed by JOSE A. DIAZ]   DATE: 7/26/13

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |